Fecteau, J.
This matter involves a complaint by the plaintiff (herein “Estate”) who contends that four parcels of real estate were fraudulently conveyed, during the summer of 1991, by the defendants to Sandra Robertson individually and to her as trustee of a family real estate trust, thus removing the name of George Robertson from record ownership of these parcels, while a lawsuit was pending between the plaintiff and the defendant George Robertson.[1] The defendants contend that the conveyances were not made fraudulently, that he was not insolvent at the time nor made insolvent by the conveyances, that they were upon fair consideration and that the plaintiff was not a creditor at the time of the conveyances. The lawsuit pending in 1991 at the time of these transfers resulted in a multi-million dollar verdict in December 1991, and the entry of an order, in May 1992, for the transfer of George Robertson’s then 100% ownership of Hopedale Development, Inc. to the plaintiff.[2]
A bifurcated trial began before me, without jury, on March 8-9, 2001; on or about May 21, 2001, the court’s findings of fact, rulings of law and a preliminary order were entered on the liability issues therein, finding in favor of the plaintiff and ordering that the four contested conveyances be set aside, subject to the final issue that had been bifurcated, namely, whether the land transactions that followed after the plaintiff had received the shares of stock of George Robertson *87 by order of the court in May 1992, in which profit was realized, should be applied to the outstanding 1991 judgment.
The remaining issue essentially relates to whether the judgment obtained by the plaintiff in the prior lawsuit in 1991 has been satisfied, in whole or in part. The defendants here claim that there should be a credit applied against the 1991 judgment for the full amount of proceeds which may have been received by the present owner of Hopedale Development, Inc., as a result of the sale of various assets of Hopedale Development, Inc., years after Roberts on’s shares were allowed to be reached and applied to the judgment by court order of transfer to the plaintiff and its assets sold thereafter to a third party by the Bankruptcy trustee.[3] The plaintiff contends that the defendants’ position is unsupported by law and would permit the defendant to take unfair advantage of the investment of time, energy and money expended by the plaintiff and her children. The plaintiffs position is that the only relevant evidence of satisfaction is what the defendants actually paid the Estate toward reducing their 1991 judgment indebtedness. The issue for resolution, then, is the impact, if any, of the reorganization of the corporation, under the supervision of the Bankruptcy Court, the shares of which the plaintiff was permitted to reach and apply in 1992, to the judgment owed by the defendant George Robertson, the sale of the shares of that corporation to an entity owned by the children of the plaintiff and the sale, years later, of significant land holdings of the corporation.
The parties offered additional evidence on this issue on November 26, 2001, and March 22, 2002; the parties were granted leave to file additional proposals for findings of fact and rulings of law related to this issue, including argument with respect to a motion to vacate order filed on behalf of Sandra Robertson on February 25, 2002.[4] Due to other scheduled obligations of the parties, they were unable to file these requests until September 27, 2002. The court took the matter under advisement at that time.
SUPPLEMENTAL FINDINGS OF FACT
1.In 1989, the Estate filed suit against the defendant, George Robertson, in the Worcester Superior Court, Civil Action No. 89-2429. Following a jury trial, the Estate was awarded damages in the amount of $5,072,911.00 (the “1991 Judgment’’), and, on December 10, 1991, an execution issued in that amount against George E. Robertson, individually. (See Ex. 1.) On or about May 21, 1992, the court (Donohue, J.) allowed the Estate’s request to reach and apply Mr. Robertson’s interests in Hopedale Development, Inc. (hereinafter “HDI”), in an effort to satisfy the 1991 judgment. George Robertson, then a 100% shareholder in HDI, having previously acquired the one-half interest of Richard Innis, and about which acquisition the first lawsuit was concerned, was then ordered to transfer all outstanding stock in HDI to the Estate. (Ex. 21.) Following the transfer of HDI stock to the Estate, Alma Innis, as Executrix, assumed control of the affairs of HDI as its sole owner.
2. When control of HDI was ordered transferred to the Estate, HDI had been operating under Chapter 11 bankruptcy protection and subject to the jurisdiction of the Bankruptcy Court since May 9, 1990, the date its petition under Chapter 11 of the Bankruptcy Code was filed. HDI was additionally exposed to the collection activities of the FDIC which, even following a foreclosure of HDI’s real estate in Hopedale, retained the right to pursue a substantial deficiency against HDI and Robertson, subject to the bankruptcy laws. He filed a petition for personal bankruptcy in July 1992. (Ex. 19.)
3. In 1992, when the Estate assumed control of Hopedale, HDI specifically reported assets, listed below, totaling $478,500.00, based upon real estate appraisals that had been requested and apparently received by George Robertson prior to the order of transfer (see attachments to Ex. 28B):
a) 191 acres in Hopedale, Massachusetts with a fair market value of $245,000;
b) 100 acres in Oxford, Massachusetts with a fair market value of $125,000;
c) 53.68 acres in Northbridge, Massachusetts with a fair market value of $87,000;
d) 14 acres in Sutton, Massachusetts with a fair market value of $14,000; and
e) 7.5 acres in Oxford, Massachusetts with a fair market value of $7,500.
(See Ex. 28C.) All of the above property was raw, undeveloped land. None had been approved for development as single-family homes. Further, none had any infrastructure. (See finding no. 13, Findings of Fact, Rulings of Law and Order, dated May 21, 2001.)
4. Not only as of the dates of his personal real estate conveyances to his wife, as of the date of the transfer of Robertson’s shares to the Estate, HDI was unable to meet its financial obligations and its debts to the FDIC, among others, outweighed its assets. For all practical purposes, HDI and the shares of stock received by the plaintiff were valueless as of the date of transfer. Indeed, in a disclosure statement filed in connection with the original bankruptcy petition of HDI, it was stated that with respect to the prospects of recovery of proceeds from the sale of its raw land, it did not expect to obtain more than the amounts estimated by the appraisals listed above, which amounts fell below its estimated liabilities, including a deficiency to the FDIC that exceeded $600,000.00.[5]
5. On or about December 13, 1993, after control of HDI had been transferred to the Estate, HDI filed a Second Amended and Restated Plan of Reorganization (hereinafter the “Plan”), which outlined the purchase *88 of HDI, and its remaining assets, by a third party — the Richard G. Innis Trust (hereinafter, the “Trust”). The Plan recited that the Trust would purchase HDI’s assets substantially at their full market value and consistent with the appraisals requested by the defendant George Robertson. More particularly, the Trust offered to purchase the assets of HDI for $455,000— $331,000 in cash and $124,000 in promissory notes— in exchange for a transfer thereof, to the Innis Land Development, Inc. (hereinafter “Innis Land Development”), of one hundred percent (100%) of the HDI stock. (Exs. 28A, 28B, 28C.) While the ownership of the shares of HDI changed, it continued as a legal entity. All shares of stock formerly owned by the Estate were canceled and new shares of common stock in HDI were issued to Innis Land Development. (Exs. 28A and 28B.)
6. On or about January 19, 1994, the Bankruptcy Court, Queenan, J., accepted the Plan, finding it to be in compliance with 11 U.S.C. §1129. (Ex. 28A.) The Bankruptcy Court expressly found, in connection with its duty to determine compliance with the Bankruptcy Code, that the Plan was proposed in good faith and not by means forbidden by law and to be feasible, meaning there would be little chance that HDI would have to seek further reorganization. (Ex. 28A.) Ultimately, the money paid by the Trust to purchase HDI from bankruptcy went directly to HDFs creditors. The Estate received nothing of value from the reorganization. (Exs. 28A and 28B.) I infer that George Robertson, who was also a creditor of the corporation, did not object to the reorganization plan nor the values of real estate set forth by the plaintiff in the plan, which relied on the 1992 appraisals of real estate prepared at the request of Robertson.
7. The Estate is a separate and distinct legal entity from the Trust; there is no evidence to suggest that the Estate proposed the Plan for any reason other than legitimate business purposes or did so to inhibit or forestall any payments the Estate could have potentially received from Mr. Robertson to satisfy the 1991 Judgment. Notwithstanding the involvement of the children of Alma Innis and her late husband Richard in the Innis Land Development, which acquired, for value, all of the HDI stock under the terms of the proposed and approved Plan, it is a distinct and separate entity from the Estate and the Trust; and, the Trust’s purchase of HDI and its assets out of bankruptcy did not, in any way, satisfy the 1991 Judgment. Neither the Trust, nor Innis Land Development, Inc., owe any duty to the defendants
SUPPLEMENTAL RULINGS OF LAW
As previously stated, this is an action by the plaintiff to reach and apply real estate interests of George Robertson that had been alleged to have been fraudulently conveyed to Sandra Robertson. A creditor may reach and apply, “in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the Commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor.” G.L.c. 214, §3(6). “An action to reach and apply is essentially a two-step process. The first is the establishment of an indebtedness on the part of the [debtor] to the plaintiff. The second is the process for collecting the debt, when established out of property rights which cannot be reached on an execution.” Springfield Redevelopment Authority v. Garcia, 44 Mass.App.Ct. 432, 436 (1998). The court has previously found that the conveyances of the properties in question were with intent to defraud creditors. A creditor can maintain an action to secure a debt upon judgment notwithstanding that an execution has issued, so long as that debt has not been satisfied. Linton v. Hurley, 114 Mass. 76 (1873). Here, there is no dispute that the 1991 judgment entered on behalf of the plaintiff or that the defendant, George Robertson, is the same person against whom judgment entered. Once the plaintiff makes such a showing, the burden shifts to the defendant to prove payment or satisfaction. See Linton v. Hurley, supra at 1. See also Swartz v. Clayton, 325 Mass. 747, 748 (1950); Capone v. Caponi, 350 Mass. 766, 766 (1966). This burden was acknowledged by the defendants at the beginning of the second phase of the trial. (Transcript of November 26, 2001, at p. 10.)
Notwithstanding that HDI, in 1998, was able to sell the land it had owned when HDI first filed for bankruptcy in 1990, these sales followed the 1992 order of transfer of shares from the defendant George Robertson to the plaintiff Estate and the approval by the Bankruptcy Court of the Reorganization Plan and sale of HDI;[6] these sales by the Innis Land Development, and/or HDI, resulting in a profit to HDI, do not satisfy, even in part, Mr. Robertson’s obligations to the plaintiffs 1991 Judgment. That the purchaser of the shares, Innis Land Development, recovered a profit from its efforts was its reward for its having taken the risk of success or failure from the plaintiffs acquisition of Robertson’s ownership interest in HDI at a time when it was factually and legally valueless, and the subsequent acquisition by Innis Land Development of reissued shares of HDI’s stock from Mr. Robertson or the Bankruptcy trustee. As was done here, where (a) an investor infuses capital into an entity that is under bankruptcy protection in an effort to reorganize and continue said entity as a going concern, (b) a plan of reorganization is approved based, at least in part, on that infusion of capital, and (c) the protected entity’s prospects improve based on the efforts of the investor, the investor is entitled to retain the fruits of its labor and efforts. See Horowitz v. Kaplan, 193 F.2d 64, 73 (1st Cir. 1952), in which it was stated: “[t]here would be little or no incentive for persons to come forward with long-chance commitments in aid of a corporate reorganization when the outlook is cloudy and uncer *89 tain, if the very success of the venture is taken as ground for denying its fruits to the one who is willing to make the speculation.” The bankruptcy estate received fair value, at that time, for the assets, by the payment of approximately the same amount at which the properties had been appraised. Those proceeds were used in payment of creditors other than the parties herein. It would be inequitable to enable Mr. Robertson to profit, in the nature of credit toward payment of the 1991 judgment, from the successful rehabilitation of HDI by the subsequent owner. While it may have been fortuitous that the real estate market recovered sufficiently during the intervening years to allow this result, the events and conditions in 1998 are simply too remote from those in 1992, factually and legally, to allow the defendants any satisfaction in regard to these 1998 land sales. Consequently, the court finds that the defendants have not met their burden to prove that the 1991 judgment has been satisfied, in whole or in part by the subsequent land sales of Hopedale Development, Inc.[7] Therefore, the plaintiff is entitled to have the four challenged conveyances set aside and to reach and apply the interests of the defendant in those properties.[8]
ORDER FOR JUDGMENT
For the reasons expressed in the initial and the supplemental findings of fact and rulings of law, judgment shall enter for the plaintiff. It is ordered that conveyances of the following four properties be set aside:
(1) the property located on Cutler Street, Hopedale, Massachusetts by deed, recorded in the Worcester County South District Registry of Deeds in Book 13469, Page 195 (“Cutler Street”),
(2) property located on Philips Road in Sandwich, Massachusetts by deed dated June 4, 1991 and recorded at the Barnstable Registry of Deeds, Book 014, Page 44, Document No. 530381, Certificate No. 123764 (hereinafter “Sandwich Property”),
(3) property located on Dutcher Street, Hopedale, Massachusetts consisting of apartment buildings containing approximately (24) units by deed recorded in the Worcester County South District Registry of Deeds in Book 13509, Page 82 (“Dutcher Street Property”), and
(4) land on Cedar Street, Milford, Massachusetts by deed recorded in the Worcester County South District Registry of Deeds in Book 13631, Page 121 (hereinafter “Cedar Street Property”).
Judgment shall also enter in favor of the plaintiff allowing her to reach the interest of George Robertson in the aforesaid properties and to apply such interest in satisfaction of the judgment in civil action no. 89-2429, by levy and sale of the interest of the defendant George Robertson in said properties, as such interest existed prior to the conveyances in question by the defendant George Robertson.

 As was noted in this court’s initial findings of fact, civil action docket no. 89-2429 filed in 1989, was an action by the plaintiff against George Robertson for non-payment on a promissory note for $900,000.00, given as 90% of the consideration he paid in 1988 for the one-half interest of the plaintiffs late husband Richard Innis, who was Robertson’s only remaining partner, in Hopedale Development Corporation (“Hopedale”). In addition to the suit for non-payment, the plaintiff also alleged fraud and undue influence in connection with the sale, contending that the defendant took advantage of the deteriorating mental condition of her late husband and acquired his interest far below its fair market value.

 The court ordered a transfer of shares, without a determination of their value or their sale.

 See e.g. Exhibit #2 (sale of 148-lot subdivision in 1998 to Greene-Mill Properties for $2.7 million).

 The motion by Sandra Robertson, as tmstee, to vacate the preliminary judgment against her is denied, and the plaintiffs cross motion seeking to correct the docket or vacate dismissal nunc pro tunc, is allowed, for the following reasons:
First it is apparent that the dismissal was entered in error. The summons to Sandra Robertson, which she received, was addressed to her in both individual and representative capacities: she was properly served, and, as the docket also indicates, such service was timely returned to the court on February 4, 1997. See Superior Court Standing Order 1-88(E)(i) (cases designated, as here, to the Fast Track have 90 days to complete service). The clerk’s docket is ordered to be corrected so to reflect sufficient service, see Mass.R.Civ.P. 60(a) (relief for clerical mistakes in parts of the record) and 1973 Reporter’s Notes thereto, and the dismissal vacated, nunc pro tunc. Also, notice of the dismissal appears to be defective as neither party apparently received it. (See Superior Court Standing Order 1-88, supra at n.6 (“The dismissal will be entered automatically by the clerk under the authority of this Standing Order and notices given as required”).)
Second, by failing to object to the insufficiency of process, the insufficiency of service of process or lack of personal jurisdiction, via answer or motion to dismiss, it is clear that Sandra Robertson, as trustee, has waived the right to do so at this juncture. See Mass.R.Civ.P. 12(h)(1). See also Astuccio v. R.K. Ahern Co., 50 Mass.App.Ct. 662, 665 n.7 (2001) (holding insufficiency of service of process argument waived “for it was not raised in ... answer” and was asserted for the first time more than six years after process). Here, the insufficiency was first raised approximately five years after service.
Third, Sandra Robertson, as trustee, appeared, answered and prosecuted the case, in both her individual and representative capacity, through counsel, and never raised that issue until after the court rendered its Preliminary Order. The Sandra Robertson, Trustee motion does not state when she became aware of the docket entry. Thus, dismissal under Superior Court Standing Order 1-88 is not warranted.

 This disclosure statement, filed by HDI with the Bankruptcy Court on March 18, 1992, while the shares were still owned by Robertson, stated:
Subject to confirmation of this Plan, the Debtor shall continue to market its remaining assets, which are as follows: 194 acres of raw land in Hopedale, Massachusetts; 97 acres of raw land in Oxford, Massachusetts: 54 acres of land in Northbridge, Massachusetts: and a single lot in Uxbridge, Massachusetts. The Debtor is currently negotiating the sale of its real estate located in Hopedale, Massachusetts. The Debtor estimates that the gross amount of that sale will be $200,000.00. Taxes and expenses will be approximately $40,000.00. The net amount realized by the Debtor’s estate will be approximately $160,000.00. The Debtor estimates that the remaining parcels of real estate will be sold for $200,000.00.
*90 (Ex. 19, tab 20, p. 6, HIV.)

 The defendants introduced evidence that subsequent to the order of this court on May 21, 1992, requiring the transfer of Robertson’s shares in Hopedale Development, Inc., to the plaintiff, HDI owned certain property, including parcels of real estate. (1-22-23-24-26-27, Transcript of November 26, 2001.) In 1998 Hopedale Development, Inc. sold:
(1) a parcel of land that it owned on May 21, 1992, for the sum of Two Million Seven Hundred and Twenty-Six Thousand Dollars (1-26-27. Exhibit 22);
(2) a parcel of real estate it owned on May 21, 1992 for the sum of Three Hundred and Fifty Thousand Dollars. This parcel included 57.4 acres (1-31-32 Exhibit 23);
(3) sold a parcel of real estate it owned on May 21, 1992 (Exhibit 24);
(4) on January 28, 1998, Hopedale Development, Inc. sold a parcel of real estate it owned on May 21, 1992 (Exhibit 25);
(5) on July 30, 1999, Hopedale Development, Inc. sold a parcel of land it owned on May 21, 1993 for Twenty-Five Thousand Dollars (1-39, Exhibit 26); and,
(6) in March 1998, Hopedale Development, Inc. sold a parcel of land it owned on May 21, 1992 (1-40, Exhibit 27).

 It is uncontested that the plaintiff did recover $40,000.00 from the sale of one of the two fishing boats owned by the defendant, and a payment of $4700.00 from the defendant.

 While the plaintiff has additionally sought the imposition of a resulting trust upon the four properties and that such relief, if granted, would entitle her to reach the entire ownership of the properties, rather than whatever ownership interest the defendant George Robertson may have, the plaintiff has not satisfied the burden of proof for such relief. “A resulting trust in real estate arises where one parly furnishes the consideration to purchase property, not intending to make a gift or advancement, yet tide is taken in another.” Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994). A resulting trust is “based upon the presumption that he who supplies the purchase price intends that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some Incidental reason.” Dwyer v. Dwyer, 275 Mass. 490, 494 (1931). When a person paying the consideration for real estate is under a natural or legal obligation to provide for the person who takes the tide, there is a presumption of a gift and no presumption of a resulting trust. See Bohaker v. Koudelka, 333 Mass. 139 (1955). As the evidence indicates, the defendants were married in 1967, and took tide to the properties in question, in 1972 (Dutcher Street, Hopedale), 1975 (Philips Road, Sandwich), 1984 (Cutler Street, Hopedale) and in two separate deeds in 1974 and 1981 (Cedar Street); tide to each was taken in both of their names as tenants by the entireties and while they were married. Additionally, the evidence indicates that Sandra Robertson worked in various capacities in businesses owned by them. The plaintiff has not shown that Sandra Robertson’s interest in these properties was not upon consideration or were not a gift. The plaintiff has not rebutted the presumption of a gift.